UNITED STATES of America, Plaintiff-Appellee,

v.

Frank De ROSA, Defendant-Appellant.

No. 84–1334.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1985.

Decided March 4, 1986.

---

Rodolfo Orjales, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Frank R. Ubhaus, San Jose, Cal., for defendant-appellant.

Before WALLACE, ANDERSON, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge.

## INTRODUCTION

Appellant De Rosa seeks reversal of the district court's order denying dismissal of his indictment. He also seeks reversal of his convictions for filing false statements in violation of 18 U.S.C. § 1001 and mail fraud in violation of 18 U.S.C. § 1341.

De Rosa challenges the district court's denial of his motion to dismiss the indictment on the basis of prosecutorial misconduct before the grand jury. In addition, he contends that his criminal convictions should be reversed because he had no duty to disclose the information requested by the government's questionnaire and the government failed to establish that the false statements were material. Finally, he contends that the district court's evidentiary rulings deprived him of a fair trial.

We affirm.

## BACKGROUND

Appellant Frank De Rosa worked for the government as a Contract Specialist at NASA–AMES. In July 1978, he became involved in some employment disputes. On September 12, 1978,[1] he accepted a similar position with Food Machinery Corporation ("FMC") to begin on October 2, 1978. Then on September 22, 1978, while still employed by the government, he applied for disability retirement from NASA–AMES claiming that he could no longer perform his duties because of a degenerative disc disease.

From November 9, 1978 to June 1, 1982, while working at FMC, De Rosa received a total of $54,143.73 in disability payments from the government. During that time, he also received three annual questionnaires from the government to determine continued eligibility ("Eligibility Questionnaires"). The questionnaires asked De Rosa only two questions: (1) whether he had "recovered sufficiently to resume duty" and (2) whether he had been employed at any time during the preceding year. Each year, De Rosa answered "no" to both questions and mailed the form back. He also received an "Annuitant's Report of Income" form ("Annuitant's Report") that requested information on his 1979 and 1980 incomes. Disability annuitants lose their benefits if in any calendar year their income equals or exceeds 80% of the salary they would have earned had they continued to work for the government. 5 U.S.C. § 8337(d). De Rosa reported his income for both years as the total of his salary from FMC less his losses from a dog grooming business. His salary without deducting the losses exceeded the 80% limit.

De Rosa was charged in a 17-count Superseding Indictment with (1) filing a false disability claim in violation of 18 U.S.C. § 287; (2) filing false statements in violation of 18 U.S.C. § 1001; and (3) mail fraud in violation of 18 U.S.C. § 1341. At his first trial, the jury returned a verdict of not guilty with respect to the false disability claim charge, but was unable to reach a verdict with respect to the other 16 counts of the Superseding Indictment. The district court declared a mistrial.

On May 9, 1984, a grand jury returned a Second Superseding Indictment charging

---

1. There is dispute in the briefs as to when he accepted the job at FMC. Appellant contends that the job was offered and accepted on October 2.

De Rosa with four counts of filing false statements in violation of 18 U.S.C. § 1001 and two counts of mail fraud in violation of 18 U.S.C. § 1341. On June 28, 1984, the jury at his second trial returned verdicts of guilty on the three counts of filing false statements in the Eligibility Questionnaires and one count of mail fraud. The jury acquitted him of the charge of making false statements on the Annuitant's Report and one count of mail fraud. The district court imposed judgment and sentence on November 2, 1984. De Rosa timely appealed, and this court has jurisdiction under 28 U.S.C. § 1291.

### DISCUSSION

#### I. *Prosecutorial Misconduct Before the Grand Jury*

##### A. *Standard of Review*

We review *de novo* a district court's determination of whether a prosecutor's alleged misconduct before a grand jury warrants dismissal of the indictment. *United States v. Sears, Roebuck and Co.,* 719 F.2d 1386, 1392 n. 9 (9th Cir.1983), *cert. denied,* 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984). The separation of powers doctrine, however, mandates judicial concern for the independence of the prosecutor and the grand jury. *United States v. McClintock,* 748 F.2d 1278, 1283 (9th Cir. 1984), *cert. denied,* — U.S. —, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985).

Generally, we "will not interfere with the Attorney General's prosecutorial discretion unless it is abused to such an extent as to be arbitrary and capricious and violative of due process." *United States v. Samango,* 607 F.2d 877, 881 (9th Cir.1979) (quoting *United States v. Welch,* 572 F.2d 1359, 1360 (9th Cir.), *cert. denied,* 439 U.S. 842, 99 S.Ct. 133, 58 L.Ed.2d 140 (1978)). In addition, the court "may not exercise its 'supervisory power' in such a way which encroaches on the prerogatives of the other

two [branches of government] unless there is a clear basis in fact and law for doing so." *United States v. Chanen,* 549 F.2d 1306, 1313 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977).

#### B. *Analysis*

"The Court's power to dismiss an indictment on the ground of prosecutorial misconduct is frequently discussed but rarely invoked." *Samango,* 607 F.2d at 881. The prosecution may exercise a wide discretion in grand jury proceedings. *United States v. Kaplan,* 554 F.2d 958, 970 (9th Cir.) (per curiam), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). "But this prosecutorial discretion is not boundless." *United States v. Al Mudarris,* 695 F.2d 1182, 1185 (9th Cir.), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983). The prosecutor may not circumvent the constitutional safeguard of a grand jury by overreaching conduct that impinges on the grand jury's autonomy and interferes with its exercise of unbiased judgment. *Id.* Therefore, we have held that an indictment may be dismissed as an exercise of the court's inherent supervisory power, *Samango,* 607 F.2d at 884, or to protect a defendant's constitutional due process rights,[2] *United States v. Basurto,* 497 F.2d 781, 785 (9th Cir.1974).

De Rosa argues that the prosecutor's line of questioning before the grand jury constituted prosecutorial misconduct that should result in dismissal of the indictment based on either Fifth Amendment due process grounds or on our inherent supervisory power. *See Samango,* 607 F.2d at 881; *Al Mudarris,* 695 F.2d at 1185.

Mr. Orjales, the prosecutor, had asked an FBI agent, the only witness to appear before the second grand jury, whether the agent had asked the doctors if the pain associated with De Rosa's disc disease could be faked. The agent answered, "Yes." Mr. Orjales then asked, "And what

---

**2.** It is not clear whether the constitutional ground is based on the due process clause of the Fifth and Fourteenth Amendments or the grand jury clause. *McClintock,* 748 F.2d at 1284 n. 2.

*Compare Samango,* 607 F.2d at 881 *and Basurto,* 497 F.2d at 785 (due process) *with Sears,* 719 F.2d at 1391 n. 7 (grand jury clause). We need not clarify this issue to decide the case at bar.

was their response?" The agent replied, "They indicated that it could be." Mr. Orjales knew that a doctor had confirmed the existence of the disease with an electromyogram and that De Rosa had been acquitted of the false disability claim charge, but failed to disclose either of these facts to the grand jury.

### 1. *Constitutional Violation*

 The constitutional analysis focuses on protecting the integrity of the judicial process, *Chanen*, 549 F.2d at 1309, and preserving fairness for the individual defendant, *McClintock*, 748 F.2d at 1284. Thus, the exercise of prosecutorial discretion may not be arbitrary and capricious. *Samango*, 607 F.2d at 881. Constitutional grounds for dismissal are limited, however, because the grand jury's determination is a preliminary one and because the full panoply of constitutional protection will be available at trial. *See Sears*, 719 F.2d at 1391 n. 7. Thus, dismissal is warranted only if the misconduct has significantly infringed upon the grand jury's ability to exercise its independent judgment. *McClintock*, 748 F.2d at 1285. The relevant inquiry focuses on the impact of the prosecutor's misconduct on the grand jury's impartiality, not on the degree of the prosecutor's culpability. *Sears*, 719 F.2d at 1392.

We have held that an indictment may be dismissed only in flagrant cases of prosecutorial misconduct. *Sears*, 719 F.2d at 1391. In *Sears*, a grand jury indicted Sears for conspiring with Japanese manufacturers to defraud the United States Government by overstating the price Sears had paid for television sets purchased from the Japanese manufacturers. 719 F.2d at 1388. The trial court dismissed the indictment after finding that before the grand jury, the prosecutor had, *inter alia:* (1) allowed a witness to make irrelevant, inflammatory, and potentially prejudicial statements by discussing with patriotic rhetoric, the devastating effect of Japanese products on the American economy; and (2) expressed his personal views concerning the evidence. *Id.* at 1388–90. Although this court found

that the prosecutor had abused his prerogatives, it still held that *Sears* had failed to demonstrate sufficient prejudice to dismiss the indictment on constitutional grounds. *Id.* at 1392.

 In this case, the testimony elicited by the prosecutor before the grand jury arguably implied that De Rosa had made a false claim. This information is irrelevant to the charges, and the false implication might have produced some prejudice against De Rosa. Even without this evidence, however, there was more than sufficient evidence to indict. Moreover, the testimony was not nearly as damaging as that excused by this court in *Sears*.

Furthermore, in assessing the impact of the FBI agent's testimony on the grand jury, we consider the prosecutor's admonitions to the grand jury that tended to neutralize the effect of the agent's testimony. *See Sears*, 719 F.2d at 1392 (court considered the prosecutor's warnings about possible bias on the part of the witness and admonitions not to take the prosecutor's own opinions as evidence in the case). At the end of the proceedings, the prosecutor in the instant case instructed the grand jurors not to concern themselves with the initial application:

> Ladies and Gentlemen, you are not to concern yourself with whether the initial application for disability was, in fact, based on fraud.
>
> The question becomes, after he applied for disability did he have a responsibility to let government know that he was performing the same duties and responsibilities that he claimed he had a disability for already? Not whether the application ... not if in fact he was disabled or not. That's not an issue; all right? Are you clear on that?

This admonition was clearly intended to alleviate whatever prejudice might have been caused by the preceding questions.

It would be difficult to find that the one statement, when counterbalanced with the prosecutor's admonition, had significantly undermined the grand jury's ability to make an objective evaluation.

### 2. *Supervisory Powers*

The supervisory powers analysis is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or the Congress to supervise the administration of justice. *McClintock,* 748 F.2d at 1284. This analysis focuses on deterring illegality and protecting judicial integrity. We first must determine whether there existed a clear basis in fact and law for the court to exercise supervisory power. *Id.* (*citing Chanen,* 549 F.2d at 1313). If so, we determine whether dismissal of an indictment is appropriate by considering the egregiousness of the prosecutor's misconduct and the availability of less drastic sanctions. *Id.*

■ Although an indictment may be dismissed only in flagrant cases of prosecutorial misconduct, even unintentional misconduct may be sufficient. *Al Mudarris,* 695 F.2d at 1188; *Samango,* 607 F.2d at 882. "The facts of each case determine when Government conduct has placed in jeopardy the integrity of the criminal justice system." *Samango,* 607 F.2d at 884.

De Rosa bases his claim of prosecutorial misconduct on *Samango.* In *Samango,* 607 F.2d at 881, the prosecutor gave the grand jury lengthy transcripts of testimony given before previous grand juries to read and did not warn them of a key witness's doubtful credibility. This court found that the transcript of the defendant's testimony was "an impressive repertory of insults and insinuations" which the prosecutor had used for the sole purpose of engendering prejudice. *Id.* at 883. In addition, the prosecutor gave the grand jury a nine-day decision deadline that discouraged a thorough and independent evaluation of the evidence. *Id.*

We found in *Samango* that "[t]he cumulative effect of the above errors and indis-

cretions, none of which alone might have been enough to tip the scales, operated to the defendants' prejudice by producing a biased grand jury." *Id.* at 884. Consequently, we found that the district court's dismissal of the indictment was a proper exercise of its supervisory power. *Id.* at 885.

The facts in De Rosa's case do not compare to the compilation of errors present in *Samango.* The only errors that De Rosa alleges are that the prosecutor left the grand jury with the impression that De Rosa might have faked the disability and that the prosecution failed to disclose De Rosa's acquittal on that issue. In short, the transcript in this case is not "an impressive repertory of insults and insinuations."

The facts of this case are closer to those in *Al Mudarris* involving an insurance mail fraud action, where the prosecutor persistently asserted that the insurance claim was a result of burn injuries incurred from setting an arson fire. 695 F.2d at 1186. In *Al Mudarris,* we recognized that a prosecutor may not make prejudicial remarks to sway the grand jury, thereby denying an accused his right to have his indictment tested by its independent judgment. *Id.* But even though we recognized that the only purpose of the information was to predispose the jury against the defendants, we refused to dismiss the indictment because the incriminating evidence was so overwhelming that the defendants were not prejudiced in the practical sense. *Id.* at 1187.[3]

■ Therefore, even if the prosecutor's actions constituted misconduct, an appellant must demonstrate a reasonable inference of bias on the part of the grand jury resulting from those actions. *United States v. Polizzi,* 500 F.2d 856, 887–88 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975) (appellants

**3.** We upheld the indictment in *Al Mudarris,* even though there were also many other errors claimed. The prosecutor did not allow enough time for the grand jurors to read the transcripts of testimony from a former grand jury proceeding. He gave the grand jurors only one day to

decide. Finally, he affirmatively misled the grand jurors as to the factors necessary to determine the credibility of the absent witnesses. None of these additional factors are even present in this case.

did not demonstrate a reasonable inference of bias from the prosecution's comments concerning the appellants' alleged Mafia connections). *See also United States v. Hasting*, 461 U.S. 499, 506, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983) (reversal of conviction under the Court's supervisory power is not needed when the alleged error is harmless).

■ Here De Rosa has not demonstrated any inference of bias. The prosecutor's behavior was questionable, but not flagrant. He admonished the grand jury in a way that should have compensated for any bias. Moreover, there was more than enough incriminating evidence before the grand jury to warrant the indictment. We therefore find that we have no clear basis in fact and law that would permit us to exercise our supervisory powers.

## II. *Duty to Disclose*

### A. *Standard of Review*

■ Whether the government must establish that the defendant had an independent duty to disclose the requested information to support a violation under section 1001 is a question of law reviewed *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Moreover, a jury verdict must be sustained if there is substantial evidence to support it. *See Robert's Waikiki U-Drive, Inc. v. Budget Rent-a-Car Systems, Inc.*, 732 F.2d 1403, 1410 (9th Cir.1984).

### B. *Analysis*

■ De Rosa challenges his conviction under 18 U.S.C. § 1001 for making false statements in the Eligibility Questionnaires.[4] He contends that the government failed to show that he had an independent statutory duty to answer the two questions contained in the Eligibility Questionnaires.

This contention is without merit. Section 1001, by itself, requires a defendant receiving disability payments truthfully to disclose information concerning his employment status and earnings to the government. *United States v. Olson*, 751 F.2d 1126, 1128 (9th Cir.1985) (per curiam).

The defendant in *Olson* was temporarily totally disabled and was indicted for making false statements about his employment status and earnings while collecting disability benefits from the government. This court noted that section 1001 does not limit its prohibition against falsification to matters that another statute or a regulation requires a person to provide. *Id.* at 1127. *See Neely v. United States*, 300 F.2d 67, 71 (9th Cir.), *cert. denied*, 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962). Requiring an independent duty would be inconsistent with the purpose of section 1001 because it is a catchall that reaches fraud not prohibited by other statutes. *Olson*, 751 F.2d at 1128.

De Rosa contends that *United States v. Dorey*, 711 F.2d 125 (9th Cir.1983) controls. While receiving benefits as a temporarily totally disabled person, Dorey was sent government questionnaires that requested him to list his current employment. He answered "none" even though he was self-employed. The indictment charged Dorey with a violation of 18 U.S.C. § 1001 by falsely making a report required by 5 U.S.C. § 8106. Holding that section 8106 did not apply to temporarily totally disabled persons, this court concluded that the government could not establish as a matter of law that Dorey was in fact required to report under section 8106 as charged in the indictment. *Id.* at 128.

We, however, distinguished *Dorey* in *Olson* by focusing on the fact that the indictment in *Dorey* charged him with a section 8106 violation as a basis for the section

---

**4.** Section 1001 states:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

1001 violation. *Id.* at 1127. As in *Olson*, but unlike *Dorey*, the section 1001 counts in De Rosa's indictment do not refer to any other section. Therefore, we find that *Olson* controls De Rosa's case and section 1001 required De Rosa to disclose the correct information on the Eligibility Questionnaires.

### III. *Materiality of the False Statements*

#### A. *Standard of Review*

De Rosa contends that the government failed to establish that the alleged false statements were material under section 1001. In reviewing the sufficiency of evidence, we view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). In addition, the verdict must be sustained if there is substantial evidence to support it. *Robert's Waikiki U-Drive, Inc. v. Budget Rent-a-Car Systems, Inc.*, 732 F.2d 1403, 1410 (9th Cir.1984).

#### B. *Analysis*

To gain a conviction under section 1001, the government must demonstrate that the false statements were material. *United States v. Deep*, 497 F.2d 1316, 1321 (9th Cir.1974) (en banc). "The test for determining materiality is whether the falsification is calculated to induce action or reliance by an agency of the United States...." *Id.* Is it one that: (1) could affect or influence the exercise of governmental functions; or (2) has a natural tendency to influence or is capable of influencing agency decision. *Id.; United States v. Carrier*, 654 F.2d 559, 561 (9th Cir.1981); *United States v. East*, 416 F.2d 351, 353 (9th Cir.1969).

In this case, De Rosa indicated on the questionnaire that: (1) he was not recovered sufficiently to resume duty; and (2) that he was not employed. Since he said he was not employed, he did not answer the subpart questions concerning the nature of his employment.

An OPM Disability Supervisor testified that if the OPM determines that a person has recovered from a disability, the OPM will terminate his annuity. *See* 5 U.S.C. § 8337(d). She also testified that if De Rosa had responded "yes" to the recovery question, the OPM would have scheduled an examination. She further testified that the purpose of the employment question is to indicate whether the recipient may be recovered, by determining if he is performing a job similar to the federal position he retired from. She said that if De Rosa had properly answered the questions, the OPM would have made further investigations.

 There is substantial evidence for a jury to find that had the OPM known of De Rosa's employment and apparent ability to resume his duties, such information would have influenced the OPM's investigations to determine whether De Rosa was still eligible to receive disability retirement payments. Therefore, the jury could properly find that the false statements were material.

### IV. *Whether the District Court's Evidentiary Rulings Deprived Appellant of a Fair Trial.*

#### A. *Standard of Review*

The standard of review for the district court's evidentiary rulings is abuse of discretion. *See United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir.1983) (evidentiary rulings in general); *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir.1983) (relevancy, balance of probative value and prejudicial impact). To determine whether the district court abused its discretion, we review whether the decision considered the relevant factors and whether there has been a clear error of judgment. *United States v. Soulard*, 730 F.2d 1292, 1296 (9th Cir.1984). The "harmless error" rule applies. *Id.*

#### B. *Analysis*

 The legal basis for De Rosa's complaints concerning the district court's evidentiary rulings is unclear. Apparently, he

believes that the court allowed the government to introduce evidence that implied that De Rosa made a false claim. Such evidence would be irrelevant and prejudicial because he had already been acquitted of the false disability claim. Consequently, De Rosa contends that the jury was permitted to speculate as to the validity of his disability application.

De Rosa's contentions are without merit. On appeal, he does not even detail what evidence was erroneously admitted. A review of the record reveals that the district court generally precluded both parties from inquiring about De Rosa's employment status or physical condition before De Rosa filed the disability application.

Furthermore, throughout the trial, the district court repeatedly advised the jury to consider De Rosa's initial application as being valid in all respects.[5] This repeated instruction appears to have been sufficient to combat whatever, if any, prejudice existed.

The only testimony on De Rosa's employment status before he filed the disability application was given on redirect, when a government witness discussed De Rosa's unsatisfactory employment evaluation and termination notice at NASA–AMES. De Rosa, however, opened the door to this inquiry by bringing up the subject when cross-examining his supervisor at NASA–AMES about their hostile relationship. Moreover, the court again advised the jury that the disability application was not based on fraud. Since De Rosa explored the supervisor's hostility on cross examination, he cannot complain when the prosecution later inquired about the basis for it. *See United States v. Geller,* 481 F.2d 275, 276 (9th Cir.1973) (per curiam).

We affirm De Rosa's conviction because we *do not find any "clear error of judgment,"* concerning the district court's evidentiary rulings.

5. In one of the instructions the court said, "Ladies and Gentlemen of the jury, I early on in the proceedings twice informed you that an application for disability was granted; that for your purposes here in this litigation you are to consider that the application was valid in all respects."

## CONCLUSION

We affirm the district court's denial of De Rosa's motion to dismiss the indictment. De Rosa failed to demonstrate that the alleged prosecutorial misconduct required dismissal under either due process or supervisory powers theories.

In addition, we affirm De Rosa's conviction. He had a duty to disclose the information pursuant to section 1001 and there was sufficient evidence to find that the false statements were material. Moreover, the district court's evidentiary rulings did not deprive De Rosa of a fair trial.

AFFIRMED.