132 F.3d 41
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kamran SHAYESTEH and Zohreh Shayesteh, Defendants-Appellants.
 No. 97-30097.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1997.
Decided Dec. 9, 1997.
 
 1
 Appeal from the United States District Court for the Western District of Washington, No. CR-93-351-BJR; Barbara Jacobs Rothstein, District Judge, Presiding.
 
 
 2
 Before: FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER**, District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Kamran and Zohreh Shayesteh, husband and wife, were found guilty of conspiring to smuggle Iranian carpets into the United States and of three counts of money laundering. In addition, Kamran Shayesteh was found guilty of making a false statement to the United States Customs Service.
 
 
 5
 * The Ninth Circuit reversed these convictions after the first trial. The Shayestehs were then retried and found guilty again. During the course of the second trial, one of the scheduled witnesses, Aziz Askarian, did not show up to testify. The court allowed the government to introduce Askarian's testimony from the first trial. In this appeal, the Shayestehs contend that, because Askarian was not "unavailable," the admission of his prior testimony violated their Confrontation Clause rights and the hearsay rules.
 
 
 6
 * Hearsay is admissible when the statement bears adequate "indicia of reliability" and the witness is "unavailable." Ohio v. Roberts, 448 U.S. 56, 63 (1980). The Shayestehs dispute only the district court's finding of "unavailability." Federal Rule of Evidence 804(a) defines unavailability to include situations in which a witness:
 
 
 7
 (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means
 
 
 8
 Fed.R.Evid. 804(a)(5). The Confrontation Clause, U.S. Const. amend. VI, adds a constitutional dimension to the unavailability requirement in criminal cases. The Supreme Court has held that a witness is not "unavailable" for purposes of the Confrontation Clause unless the prosecutor has made a good-faith effort to obtain his presence at trial. See Barber v. Page, 390 U.S. 719, 724-25 (1968). The prosecutor need not, however, perform a "futile act," one with no possibility of procuring the witness. Roberts, 448 U.S. at 74. Instead, "[t]he lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." Id. (quoting California v. Green, 399 U.S. 149, 189 n. 22 (1970) (Harlan, J., concurring) (internal quotation marks omitted)). Thus, the question in this case is whether the prosecution took reasonable steps to obtain the presence of Askarian.
 
 
 9
 We are persuaded that it did. Askarian is a Canadian citizen residing in Canada. When he failed to attend the second trial, despite his previous assurances, the United States made numerous calls to his pager and left several messages on his answering machine. When Askarian did not respond, the United States requested the Royal Canadian Mounted Police ("RCMP") to track him down. The RCMP found Askarian, who claimed that his "bad back" would prevent him from testifying "today."
 
 
 10
 The Supreme Court's decision in Mancusi v. Stubbs, 408 U.S. 204 (1972), satisfies us that the government's efforts met, and indeed surpassed, the constitutional requirements. In Stubbs, the Court held that, because the absent witness resided in a foreign nation, the prosecution was "powerless to compel his attendance at the second trial, either through its own process or through established procedures depending on the voluntary assistance of another government." Id. at 212. The Supreme Court did not require any additional steps to persuade or to cajole the witness into attending trial. To be sure, the prosecution in Stubbs was the State of Tennessee, whereas the prosecution in Shayesteh is the federal government. This distinction, however, is inconsequential because even the federal government is without the ability to force a Canadian citizen residing in Canada to attend trial in the United States.[1] Thus, the United States made reasonable efforts to obtain Askarian's presence.
 
 
 11
 The Shayestehs' arguments to the contrary are unavailing. The Shayestehs first contend that the district court should have ordered Askarian's testimony on pain of contempt. Such a threat would have been an empty one, with no method of enforcement.[2] The Shayestehs also argue that the United States should have asked Askarian to testify some time in the future, stressing that Askarian merely said he would not fly down "today." Such a request would have been futile. Askarian's failure to notify the prosecution of his "bad back" despite the prosecution's repeated attempts to contact Askarian and despite his previous assurances that he would attend trial strongly suggests that Askarian was simply seeking to avoid testifying. Thus, the district court did not err in finding Askarian "unavailable."
 
 B
 
 12
 Moreover, even if the district court had erred, the Shayestehs did not object at trial to the admission of Askarian's prior testimony. When a party raises an argument on appeal that was not preserved at trial, the standard of review is the highly deferential plain error test. See United States v. Olano, 507 U.S. 725, 732 (1993). If there were any doubt that the district court properly admitted Askarian's prior testimony, the Shayestehs' failure to object undercuts their claim.
 
 II
 
 13
 Kamran Shayesteh was also convicted of making a false statement to a customs officer in violation of 18 U.S.C. § 1001. His allegedly false statement was that he is a "real estate salesperson in Burlingame [California]." Kamran Shayesteh challenges that conviction on grounds of insufficiency of evidence. Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt of each essential element of the crime charged. See United States v. Boone, 951 F.2d 1526, 1531 (9th Cir.1991). Kamran Shayesteh contends that there was insufficient evidence of two necessary elements of § 1001: the falsity and the materiality of his statement.
 
 
 14
 As for the falsity of the statement, the parties stipulated that the Real Estate Commissioner for the State of California would testify that Kamran Shayesteh was not licensed to deal in real estate in the State of California. The Shayestehs contend that this stipulation is irrelevant to Kamran's conviction because Kamran had merely told the customs agent that he was a real estate salesperson, not a real estate dealer or a real estate broker. Contrary to the Shayestehs' argument, however, this stipulation is of the utmost relevance. Under California law,
 
 
 15
 It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the department.
 
 
 16
 Cal.Bus. & Prof.Code § 10130. This law requires all real estate salesmen, as well as all real estate brokers, to obtain a license. Because Kamran did not have a license, either he was not a real estate salesman or he had been selling real estate illegally. Especially in light of the ample evidence that Kamran was actually a carpet salesman, a reasonable jury could certainly find beyond a reasonable doubt that Kamran was not a real estate salesperson.
 
 
 17
 Moreover, Kamran did not raise the issue of falsity at trial. Consequently, he is foreclosed from arguing on appeal that the government failed to prove this element. See United States v. Smith, 924 F.2d 889, 893 (9th Cir.1991). Under these circumstances, a court "may review the sufficiency of the evidence only to prevent a 'manifest miscarriage of justice,' " id. 893-94 (quoting United States v. Curtis, 568 F.2d 643, 647 (9th Cir.1978)), a concern not present here.
 
 
 18
 As for materiality, the test is whether the defendant's statement "(1) could affect or influence the exercise of governmental functions; or (2) has a natural tendency to influence or is capable of influencing agency decision." United States v. De Rosa, 783 F.2d 1401, 1408 (9th Cir.1986). When asked whether he would have conducted his actions any differently had Kamran admitted to being a carpet dealer, the customs officer responded "I would have seized the rugs immediately." In light of the jury's exclusive province to evaluate the credibility of witnesses, United States v. Goode, 814 F.2d 1353, 1355 (9th Cir.1987), it appears that the customs officer's testimony constitutes substantial evidence of materiality. Thus, the evidence supporting Kamran's conviction under § 1001 is not insufficient.
 
 III
 
 19
 For the foregoing reasons, we affirm the Shayestehs' convictions.
 
 
 20
 AFFIRMED.
 
 
 
 **
 The Honorable William W. Schwarzer, Senior District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Treaty Between the Government of the United States of America and the Government of Canada on Mutual Legal Assistance in Criminal Matters, Mar. 18, 1985, U.S.-Can., 1985 WL 301941, does not provide the necessary means. Article XII of the treaty permits a requesting country to compel testimony, but only "in the Requested State," not the requesting state. Thus, the most that the prosecution could have done was to take Askarian's testimony in Canada
 
 
 [2]
 The Treaty on Extradition Between the United States of America and Canada, Dec. 3, 1971--July 9, 1974, U.S.-Can., art. II, 27 U.S.T. 983, 986, allows for extradition only of individuals charged with felonies. The 1988 Protocol amended the extradition treaty but did not affect the section at issue. See Protocol Dated January 11, 1988, Amending the Treaty on Extradition Between the United States of America and Canada, Jan. 11, 1988, U.S.-Can., Hein's No. KAV 237