917 F.2d 567
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Joe MURRAY, Defendant-Appellant.
 No. 89-10413.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 2, 1990.
Decided Nov. 2, 1990.
 Before GOODWIN, Chief Judge, and JAMES R. BROWNING and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The facts and procedural history are set forth in the Memorandum for United States v. Stout, case No. 89-10410.
 
 
 3
 I. PROSECUTORIAL MISCONDUCT BEFORE THE GRAND JURY
 
 
 4
 This court will dismiss a grand jury indictment for prosecutorial misconduct "only upon a showing of 'flagrant error' that significantly infringes on the ability of the grand jury to exercise independent judgment and actually prejudices the defendant." United States v. Larrazolo, 869 F.2d 1354, 1357 (9th Cir.1989) (quoting United States v. Wright, 667 F.2d 793, 796 (9th Cir.1982)). Murray alleges two types of prosecutorial misconduct before the grand jury. We discuss each in turn.
 
 A. Misrepresenting Hearsay
 
 5
 Murray alleges that the prosecutor engaged in misconduct by misleading the grand jury into believing that a witness was giving an eyewitness account rather than relating hearsay. In the Ninth Circuit, an indictment "may be based solely on hearsay." United States v. Al Mudarris, 695 F.2d 1182, 1185 (9th Cir.), cert. denied, 461 U.S. 932 (1983).
 
 
 6
 Murray's claim arises from the following exchange that occurred before the grand jury, in which the prosecutor questioned Agent Magers:
 
 
 7
 Q: Now, in addition, did Mr. Murray have anything on his person?
 
 
 8
 A. When Mr. Murray was arrested on the sun porch, they found a--what we call a bindle of white powder, which was methamphetamine, in his trouser pocket.
 
 
 9
 Q. What else did you find?
 
 
 10
 A. We also found a couple pieces of paper with a recipe on how to make methamphetamine.
 
 
 11
 (emphasis added).
 
 
 12
 The witness, Agent Magers, was not the person who actually made the discovery about which the prosecutor was inquiring. Murray alleges that the prosecutor knew this, and that the prosecutor's use of the word "you" in his question misled the jury members into believing that they were hearing eyewitness, rather than hearsay, testimony. This argument is without merit. Agent Magers never claimed that he personally found the items; in fact, he specifically used the terms "they" and "we," making clear that he was discussing the work of the group of agents involved in the search, not necessarily his own work. This exchange does not amount to "flagrant error," which is necessary to meet the standard for dismissal under Lazzarolo, 869 F.2d at 1357.
 
 B. Presenting Perjured Testimony
 
 13
 Agent Magers testified to the grand jury that "they" found a packet of white powder in Murray's trousers. Earlier, Magers had sworn an affadavit in support of the complaint, which stated that a bindle of white powder was taken from Murray's vest. Because of this discrepancy, Murray asserts that the prosecutor knew that Magers was lying to the grand jury and had a duty to reveal this fact.
 
 
 14
 This claim is without merit. It assumes that the prosecutor knew where the material really was found, and thus knew at which point the agent was testifying falsely; it further assumes that the difference in testimony about whether the item was found in Murray's trousers or vest significantly infringed on the grand jury's ability to exercise its judgment, in violation of Larrazolo, 869 F.2d at 1357. But in both cases, the agent testified that the drugs were found somewhere on Murray's person. A different in testimony regarding which pocket the material came from could not have resulted in actual prejudice to Cox, as required under Larrazolo, 869 F.2d at 1357.
 
 II. PROSECUTORIAL MISCONDUCT AT TRIAL
 
 15
 At trial, government witnesses disagreed over whether the items of contraband were found in Murray's trousers or vest. Murray alleges that the prosecutor knew which of the witnesses was testifying falsely, and deliberately called one of the agents "for the purpose of encouraging false testimony." But mere "inconsistency is not tantamount to perjury absent a showing of knowing falsehood." United States v. Flake, 746 F.2d 535, 539 (9th Cir.1984), cert. denied, 469 U.S. 1225 (1985). Further, the district court found that there was no prosecutorial misconduct, and a district court's findings of fact regarding a claim of perjured testimony must be upheld unless clearly erroneous. United States v. Benny, 786 F.2d 1410, 1419 (9th Cir.), cert. denied, 479 U.S. 1017 (1986).
 
 
 16
 Murray claims that the agents changed their testimony about where the contraband was found in order to rebut his defense theory that the vest belonged to a woman. But the inconsistency emerged before the prosecutor was aware of Murray's defense theory, and thus could not have been fabricated in an attempt to rebut that theory. Aside from his blanket assertion that "the government was aware of its case and its evidence," Murray has provided no evidence to support his claim that the prosecutor deliberately encouraged false testimony.
 
 
 17
 Murray further claims that the prosecutor was guilty of misconduct because he failed to question Agent Magers about the discrepancy in testimony concerning the location of the evidence. Murray does not allege that he was in any way denied the opportunity to cross examine Agent Magers about the alleged inconsistencies in Magers' testimony. His claim is apparently that it was the prosecution's job to bring out any possible inconsistencies in the testimony of prosecution witnesses. There is no basis for this assertion.
 
 III. FATAL VARIANCE
 
 18
 Murray contends that a fatal variance occurred at trial because evidence presented to the grand jury concerning where on Murray's person (trousers or vest) the contraband was found varied from the evidence presented at trial. Murray asserts that "[w]here the theory of the prosecution's case substantially and materially differs from that on which the grand jury based its indictment, a new trial or dismissal is mandated." But the "theory of the prosecution's case" did not change between indictment and trial. Murray's indictment charged him with conspiracy, manufacturing methamphetamine, and possession with intent to distribute methamphetamine, and these are the charges on which he was tried. The variation between grand jury and trial testimony as to where on Murray's person contraband was found did not affect his "substantial rights," as required for reversal. United States v. Anderson, 532 F.2d 1218, 1227 (9th Cir.), cert. denied, 429 U.S. 839 (1976). Accordingly, the conviction is
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3