36 F.3d 1103
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Juan Mafnas ATOIGUE, Defendant-Appellant.
 No. 92-10589.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1994.
Decided Sept. 2, 1994.
 
 Before: FERNANDEZ, RYMER, and T.G. NELSON, Circuit Judges.
 
 MEMORANDUMd
 
 1
 Juan Mafnas Atoigue (Atoigue) appeals his jury conviction for seven counts of first degree criminal sexual conduct in violation of 9 Guam Code Ann. Sec. 25.15(a)(1), and one count of second degree criminal sexual conduct in violation of 9 Guam Code Ann. Sec. 25.20(a)(1). We affirm.
 
 I. APPLICABLE LAW
 
 2
 Where Guam law is unclear, we find California law persuasive. Guam v. Ojeda, 758 F.2d 403, 406 (9th Cir.1985). In addition, because the Guam Code of Evidence is identical to the Federal Rules of Evidence, we rely on interpretations of the Federal Rules, or their applicable counterparts in the California Rules of Evidence, when evidentiary questions arise. Id. "We look to relevant Ninth Circuit authority when interpreting a Guam statutory rule that closely tracks a federal procedural rule." De Vera v. Blaz, 851 F.2d 294, 296 (9th Cir.1988).
 
 II. DNA EVIDENCE
 
 3
 California and Ninth Circuit authority are in conflict as to the admissibility of DNA evidence and its statistical probability counterpart. In several pre-Daubert[1] cases, the California Court of Appeal has held that because the statistical analysis is not generally accepted in the scientific community, the DNA evidence was inadmissible. See People v. Barney, 8 Cal.App.4th 798, 820, 822 (1992); see also People v. Wallace, 14 Cal.App.4th 651, 659 (1993) (testimony which produced frequency estimate of one in twenty-six million should have been excluded). Nonetheless, in both cases, the California Court of Appeal concluded that the error was harmless. See Barney, 8 Cal.App.4th at 825-26; see also Wallace, 14 Cal.App.4th at 661-63.
 
 
 4
 We recently held that under Daubert, "the three chief components of DNA profiling[,] ... sample processing, match determination and statistical analysis pass muster under [Fed.R.Evid.] 702." United States v. Chischilly, No. 92-10619, slip op. 8097, 8122 (July 25, 1994). In Chischilly, the defendant marshalled several arguments against the admissibility of statistical probability evidence[2], including the fact that substructuring within the Native American and Navajo populations invalidates the use of such evidence and that the database was too small because it contained too few Navajos. Id. at 8117. We rejected these arguments and concluded that the district court did not abuse its discretion in admitting both the DNA match evidence and the testimony regarding the probability of a coincidental match. Id. at 8117-22.
 
 
 5
 Because we conclude that any error in the admission of the DNA evidence was harmless, we do not determine whether the district court erred in admitting the DNA evidence. Rulings on the admissibility of evidence where Fourth Amendment claims are not involved are considered non-constitutional. United States v. Echavarria-Olarte, 904 F.2d 1391, 1398 (9th Cir.1990). Therefore, reversal is not required where "it is more probable than not that the prejudice resulting from the error did not materially affect the verdict." Id. We so conclude in this case.
 
 
 6
 First, Mary Jo's testimony on count five, the period during which Mary Jo's baby was conceived and the count for which the DNA provided corroboration, established sufficient evidence to convict Atoigue. Mary Jo testified that Atoigue had sexual intercourse with her approximately twice a week between November 1989 and June or July 1990. More specifically, her testimony established criminal sexual conduct for each count charged in the indictment.[3] In addition, although Atoigue contends that there was insufficient evidence to support his convictions on counts five, six and seven, we disagree. See infra for discussion of the sufficiency issue. Moreover, Guam law permits a defendant to be convicted of criminal sexual conduct solely with the victim's testimony, and without corroboration. See 9 Guam Code Ann. Sec. 25.40.
 
 
 7
 Second, during closing argument, the prosecutor emphasized the fact that the DNA evidence was corroborative and that it did not displace the other evidence in the case, including Mary Jo's testimony. See Wallace, 14 Cal.App.4th at 662 (in concluding that admission of DNA evidence was harmless, court found it persuasive that prosecutor emphasized corroborative aspect of DNA evidence in that it was "just another piece of evidence").
 
 
 8
 Third, Mary Jo's sister, who shared a bedroom with Mary Jo, provided corroboration. She testified that during the summer of 1989 Atoigue woke her up when he came into their bedroom. He was tapping Mary Jo on the shoulder telling her to wake up. He said, "Mary Jo, wake up 'cause I know you want it." Mary Jo responded by saying "No." During her testimony, Mary Jo also explained that she did not tell anyone about what was happening because he told her not to tell anyone and because she feared for her life. She was afraid that "he might shoot me or something ... '[c]ause he had a rifle in his ... room."
 
 
 9
 Fourth, Mary Jo's pregnancy, independent of the DNA evidence, supported her claim that Atoigue had had sexual contact with her.
 
 
 10
 Fifth, the jury viewed the house, and was therefore free to disregard Atoigue's argument that if he had been sexually abusing Mary Jo, someone living in the house (given its open floor plan) would have noticed.
 
 
 11
 Finally, the trial court instructed the jurors that they were free to accept or reject the expert testimony and that they should give it only as much weight as they felt it deserved. Accordingly, even assuming it was error to admit the DNA evidence, we conclude that it is more probable than not that any prejudice resulting from such an error did not materially affect the verdict. See Echavarria-Olarte, 904 F.2d at 1398.
 
 III. SPEEDY TRIAL
 
 12
 A. Statutory Speedy Trial Right (8 G.C.A. Sec. 80.60)
 
 
 13
 Section 80.60(a)(2) requires the trial court to dismiss the criminal action if "[t]he trial of a defendant, who is in custody at the time of his arraignment, has not commenced within forty-five (45) days after his arraignment."[4] However, the "criminal action shall not be dismissed pursuant to Subsection (a) if ... [g]ood cause is shown for the failure to commence the trial within the prescribed period." Sec. 80.60(b)(3).
 
 
 14
 The California Penal Code has a similar good cause exception. Section 1382 provides that absent a showing of good cause, a defendant must be brought to trial within sixty days of the filing of the information. See 10 Cal.Penal Code Sec. 1382. Inasmuch as Guam law is unclear and the California speedy trial statute parallels Guam's speedy trial statute, we rely on California law to determine whether Atoigue's speedy trial rights were violated. See Ojeda, 758 F.2d at 406. In interpreting its speedy trial statute, the California Supreme Court has held that where a defendant seeks post-conviction review of the denial of his right to a speedy trial, he must show not only that the delay was unjustified, but that he suffered prejudice as a result of the delay. People v. Johnson, 606 P.2d 738, 741, 749 (Cal.1980) (held defense counsel's continuous calendar conflict did not constitute good cause to justify delay of 144 days; but, conviction not reversed because defendant did not show prejudice from delay). Thus, Atoigue must establish, first, that good cause to justify the delay did not exist, and second, that prejudice resulted from the delay.
 
 
 15
 Determining what constitutes good cause for delaying a criminal trial is a matter that lies within the trial court's discretion. Id. at 746. Good cause to justify a delay exists, for example, when it is caused by the defendant's own conduct; when it occurs for the defendant's benefit; or, when it arises from unforeseen circumstances. Id. Delay which is the prosecution's fault does not constitute good cause. Id. at 746-47.
 
 
 16
 In this case, the delay between arraignment (January 9) and trial (July 29) was approximately 200 days. The trial court found good cause to continue the trial beyond the forty-five day limit contained in Sec. 80.60(a)(2) (approximately February 23), to April 23 in order to permit forensic analysis of the DNA which Guam estimated would take anywhere from eight weeks to three months. We find that subjecting Atoigue's blood samples to DNA analysis constituted good cause for the delay. Not only was this evidence important for the prosecution, it was potentially exculpatory evidence because the DNA test could have excluded Atoigue as the father. Delay for a defendant's benefit constitutes good cause. See id. at 746.
 
 
 17
 Further delay became necessary when Guam discovered that the FBI would be unable to perform the DNA tests, thereby making it necessary to hire an alternate laboratory. As Guam points out, it sent the blood samples to the FBI laboratory in early February 1991 after having been advised that the laboratory would perform those tests. As soon as Guam discovered that it had been misinformed, it sent the blood to Cellmark. The purpose of "the right to a speedy trial is to protect those accused of crime against possible delay, caused either by willful oppression, or neglect of the state or its officers." Id. at 747 (emphasis added) (internal quotations omitted). There is no evidence to suggest that Guam acted in bad faith or without due diligence. Indeed, the trial court found that Atoigue had failed to establish that the prosecution acted in bad faith. Moreover, delay arising from unforeseen circumstances, as in this case, constitutes good cause. See id. at 746.
 
 
 18
 The next delay occurred after the DNA test results were completed (April 17). As Atoigue concedes, after he received the results, he had to have the material independently reviewed. Such a delay was for his benefit, and thus constitutes good cause.[5] See id. Finally, there was good cause justification for the delay between July 11 and the July 29 trial date because the trial court conducted a Frye hearing on the admissibility of the DNA evidence. Because the delay was justified in this case, we need not determine whether Atoigue suffered prejudice. See id.
 
 
 19
 B. Constitutional Speedy Trial Right (Sixth Amendment)
 
 
 20
 We also reject Atoigue's alternative contention that his Sixth Amendment right to a speedy trial was violated. We must weigh four factors to determine whether a defendant's right to a speedy trial has been violated under the Sixth Amendment, including: (1) whether pretrial delay was uncommonly long, (2) whether the Government or the criminal defendant is more to blame for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as a result of the delay. Doggett v. United States, 112 S.Ct. 2686, 120 L.Ed.2d 520, 528 (1992); see also Barker v. Wingo, 407 U.S. 514, 530 (1972). Although none of these factors are dispositive, the length of delay acts as a triggering mechanism. See United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir.1986).
 
 
 21
 We have held that a six-month delay is sufficient to trigger inquiry into the additional three factors. See United States Simmons, 536 F.2d 827, 831 (9th Cir.1986); see also Valentine, 783 F.2d at 1417 (although six-month delay is "not very long," it is sufficient to trigger further inquiry). Further inquiry into the remaining three factors is necessary in this case because the delay was more than six months. With regard to the second factor, as previously noted, the record does not support intentional or bad faith delay on the part of the prosecution. The third factor weighs in favor of Atoigue because he asserted his right to a speedy trial throughout the delay.
 
 
 22
 The fourth factor, prejudice caused by the delay, requires more detailed consideration. The Supreme Court clarified the prejudice factor in Doggett, where it "described three situations and explained that the defendant must show a different level of prejudice under each." United States v. Aguirre, 994 F.2d 1454, 1456, 1457-58 (9th Cir.) (five-year delay does not constitute speedy trial violation where Government diligently pursued defendant and he failed to assert his speedy trial rights, even assuming severe prejudice), cert. denied, 114 S.Ct. 645 (1993). First, where the prosecution proceeds with reasonable diligence, the speedy trial claim fails as a matter of course regardless of the length of the delay, unless the defendant can establish specific prejudice to his defense. Id. at 1456. The second situation occurs where the Government acts intentionally or with bad faith in causing the delay. Such conduct coupled with a lengthy delay presents an overwhelming case for dismissal. Id. Third, prejudice is presumed where the Government is negligent. But, whether the Government's negligence weighs in favor of the defendant will depend upon the length of the delay. Id.
 
 
 23
 Because Guam did not act with bad faith, the second situation does not apply, leaving either the first or third situation. Nor has Atoigue established that Guam was negligent. Thus, the first situation best characterizes the present case because, as indicated above, Guam acted with reasonable diligence in seeking to obtain the DNA evidence.
 
 
 24
 Atoigue has not established specific prejudice resulting from the delay. He contends that the delay was prejudicial because it permitted the Government to obtain further evidence against him. In other words, he argues, because the DNA evidence was prejudicial, the delay was prejudicial. The Supreme Court has suggested otherwise. See Doggett, 120 L.Ed.2d at 531 ("[S]peedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, [or] oppose pretrial motions.... We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." (emphasis added)). Because we find that Atoigue has failed to establish specific prejudice, we reject his Sixth Amendment claim. See Doggett, 120 L.Ed.2d at 531.
 
 IV. SUFFICIENCY (Counts Five through Seven)
 
 25
 Section 25.15(a)(1) provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with the victim and if ... the victim is under fourteen (14) years of age." Mary Jo's age is not disputed; she was eleven in 1989 and twelve in 1990. Specifically, Atoigue argues that there was insufficient evidence with regard to counts five, six and seven because Mary Jo could not recall specific dates and because there was no proof of penetration. We reject both arguments.
 
 A. Specific Dates
 
 26
 The amended indictment alleged that criminal sexual conduct occurred "on or between April 1, and April 30, 1990," (count five), "on or between May, and May 31, 1990," (count six), and "on or between June 1, and July 31, 1990" (count seven).
 
 
 27
 COUNT FIVE: Mary Jo testified that she was approached sexually by Atoigue during April 1990. She did not recall the exact date in April " '[c]ause it's been going on most[ ] frequently." She testified that "frequently" meant twice a week.
 
 
 28
 COUNT SIX: Mary Jo testified that Atoigue had sex with her in May 1990. When asked if there was ever "a period of time, such as a week in May, when [Atoigue] did not approach [her] and have sex with [her] in May," she responded, "No."
 
 
 29
 COUNT SEVEN: Mary Jo testified that shortly before Atoigue moved out of the house in the summer of 1990, he pulled her into his room, undressed her and "put his penis in my vagina." In addition, the paramedic, who examined Mary Jo in December 1990 and discovered that she was pregnant, testified that Mary Jo told him that she last had intercourse the day before Atoigue moved out. Mary Jo's mother testified that Atoigue moved out in July. We hold that a rational jury could conclude that Atoigue had sexual intercourse with Mary Jo between June 1 and July 31.
 
 
 30
 The indictment alleged dates with sufficient specificity because it placed the alleged illegal activity within an identifiable time frame. See United States v. Harrison-Philpot, 978 F.2d 1520, 1525 (9th Cir.1992) (regarding dates of conspiracy), cert. denied, 113 S.Ct. 2392 (1993). Mary Jo testified that the sexual conduct occurred during those specified time periods. The fact that she could not recall the specific dates within the time periods contained in each count of the indictment does not require reversal, especially given the fact that Atoigue had sex with her as much as twice per week between November 1989 and June or July 1990. Moreover, where the statute does not make time a material element of the offense charged, as in this case, the variance between proof at trial and the indictment is irrelevant as long as the defendant was afforded adequate notice of the charge against him. See United States v. Laykin, 886 F.2d 1534, 1543 (9th Cir.1989) (dates of conspiracy), cert. denied, 496 U.S. 905 (1990).
 
 B. Sexual Penetration
 
 31
 Similarly, we conclude that Guam proved sexual penetration for counts five through seven. "Sexual penetration" is defined as "sexual intercourse ... or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." 9 Guam Code Ann. Sec. 25.10(a)(9).
 
 
 32
 COUNTS FIVE & SIX: Mary Jo testified that she was "approached sexually" by Atoigue during April 1990 and that Atoigue had sex with her in May 1990. Although Mary Jo did not specifically state "sexual intercourse," see 9 Guam Code Ann. Sec. 25.10(a)(9), the rational inference drawn from her testimony, as well as her explicit testimony with regard to the other counts, is sufficient to sustain the convictions on counts five and six. See, e.g., United States v. Red Cloud, 791 F.2d 115, 117-18 (8th Cir.1986) (absent direct evidence of penetration, officers' testimony detailing circumstances in which they discovered man on top of 14-year old girl sufficient to support inference of sexual penetration).
 
 
 33
 COUNT SEVEN: Mary Jo testified that shortly before Atoigue moved out of the house in the summer of 1990, he pulled her into his room, undressed her and "put his penis in my vagina." Her testimony on this count was sufficient to prove sexual penetration. Based upon the record and all rational inferences drawn therefrom, we affirm counts five through seven. See United States v. Johnson, 804 F.2d 1078, 1083 (9th Cir.1986) (in making sufficiency determination, Guam is "entitled to all reasonable inferences that might be drawn from the evidence.").
 
 V. PROSECUTORIAL MISCONDUCT
 
 34
 "An indictment may be dismissed for prosecutorial misconduct only upon a showing of 'flagrant error' that significantly infringes on the ability of the grand jury to exercise independent judgment and actually prejudices the defendant." United States v. Larrazolo, 869 F.2d 1354, 1357 (9th Cir.1989). Dismissal of a grand jury indictment may be based upon either a constitutional defect or supervisory power. Larrazolo, 869 F.2d at 1357. Atoigue invokes both bases.
 
 A. Constitutional Theory
 
 35
 Under the constitutional theory, reversal is only warranted if prosecutorial misconduct significantly infringes upon the grand jury's ability to render its independent judgment. Id. Constitutional error occurs either "where the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice to the defendant[,]" or where the "defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding." Id. at 1357-58 (internal quotations omitted).
 
 
 36
 Atoigue has not shown a history of systematic and pervasive prosecutorial misconduct. Thus, the issue is whether the grand jury proceeding was so fundamentally unfair as to constitute a constitutional defect warranting reversal. We conclude that it was not. Atoigue cites three instances of prosecutorial misconduct during the grand jury proceeding: (1) improper references to Mary Jo's baby and improper characterization of the incidents as "attacks"; (2) leading questions and hearsay; and, (3) reference to his prior convictions.
 
 1. References to Infant
 
 37
 A defendant has no right to fair or objective grand jury deliberations. United States v. Isgro, 974 F.2d 1091, 1096 (9th Cir.1992) (Supreme Court has "clearly reject[ed] the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."), cert. denied, 113 S.Ct. 1581 (1993). For example, the prosecutor has no duty to present to the grand jury either matters bearing on credibility, or exculpatory evidence. Id. (citing cases). Thus, we find that references to the infant do not require reversal.
 
 2. Hearsay & Leading Questions
 
 38
 Guam law provides that "[t]he grand jury shall receive only competent evidence but the fact that evidence which is incompetent was received by the grand jury does not render the indictment void where sufficient competent evidence to support the indictment was received by the grand jury." 8 Guam Code Ann. Sec. 50.42. We have held that Sec. 50.42 "create[s] minimal restrictions of reliability." Guam v. Quidachay, 815 F.2d 1311, 1313 (9th Cir.1987) (hearsay evidence is competent evidence under Sec. 50.42, and therefore is sufficient to support indictment). We have a similar rule. See United States v. Al Mudarris, 695 F.2d 1182, 1185 (9th Cir.) ("It is well settled that an indictment may be based solely on hearsay."), cert. denied, 461 U.S. 932 (1983).
 
 
 39
 Similarly, leading questions are not grounds for dismissal. Atoigue is objecting to the form of the evidence, not its substance. The evidence need not be admissible under the rules of evidence, so long as it is of a type reasonable persons would rely upon in conducting their daily affairs. Quidachay, 815 F.2d at 1313. Hence, neither the hearsay evidence nor the leading questions provide a ground for reversal.
 
 3. Prior Convictions
 
 40
 Under Guam law, prior convictions may be charged in the indictment for sentencing purposes. 8 Guam Code Ann. Sec. 55.40. Moreover, the grand jury was cautioned not to consider his prior convictions in reaching a decision. Accordingly, we find that no error occurred in referring to Atoigue's prior convictions.[6]
 
 B. Supervisory Power
 
 41
 Invocation of our supervisory power is not justified. We may invoke our supervisory powers to dismiss a grand jury indictment for prosecutorial misconduct if the defendant is actually prejudiced. Larrazolo, 869 F.2d at 1358. Under this standard of prejudice, dismissal is warranted "only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Isgro, 974 F.2d at 1098 (internal quotations omitted).
 
 
 42
 Atoigue has failed to establish actual prejudice resulting from the incidents of misconduct he cites. As concluded in the previous section, none of the alleged incidents of misconduct constitute grounds for reversal. Moreover, the fact that he was convicted by the petit jury on all counts suggests that the alleged misconduct did not "substantially influence[ ] the grand jury's decision to indict." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (internal quotations omitted). Accordingly, Atoigue is not entitled to relief under either the constitutional or supervisory theory.
 
 VI. VINDICTIVE PROSECUTION
 
 43
 "To establish a prima facie case of prosecutorial vindictiveness, a defendant must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such." United States v. Sinigaglio, 942 F.2d 581, 584 (9th Cir.1991). Atoigue has offered no direct evidence to show actual vindictiveness. He "submits that at the very least the facts surrounding the superseding indictment warrant an appearance of vindictiveness" because the additional charges were not a legitimate response to criminal conduct, but were in response to his opposition to Guam's motion for a blood sample.
 
 
 44
 Where there is no showing of actual vindictiveness, we distinguish between cases involving increased charges after trial and those cases involving increased charges before trial. See United States v. Gallegos-Curiel, 681 F.2d 1164, 1167 (9th Cir.1982); see also United States v. Goodwin, 457 U.S. 368, 381 (1982) (post-trial charging decision is much more likely to be improperly motivated than pretrial decision). In a pretrial situation, as is the case presented, an "appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he exercised his specific legal rights." Gallegos-Curiel, 681 F.2d at 1169. In holding that a presumption of vindictiveness is not warranted in the pretrial setting, the Supreme Court reasoned that "[i]t is unrealistic to assume that a prosecutor's probable response to [a defendant's pretrial] motions is to seek to penalize and deter." Goodwin, 457 U.S. at 381. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." Id. at 382 (footnote omitted).
 
 
 45
 Atoigue claims that the addition of several counts suggests a reasonable likelihood of vindictive prosecution. Nonetheless, we have rejected a similar argument. See Sinigaglio, 942 F.2d at 584 ("When increased charges are filed in the routine course of prosecutorial review or as a result of continuing investigation, there is no realistic likelihood of prosecutorial abuse, and therefore no appearance of vindictive prosecution arises merely because the prosecutor's action was taken after a defense right was exercised." (internal quotations omitted)).
 
 
 46
 We have stated that "[t]he exercise of routine or clearly necessary defense motions in the pretrial stage does not meet the threshold for more detailed inquiry and does not suffice to raise a presumption of vindictiveness." Gallegos-Curiel, 681 F.2d at 1169. Atoigue has not satisfied this threshold requirement. Although he argues that the evidence supporting these additional counts was "flimsy," the jury convicted him on those counts and, as noted above, there was sufficient evidence to sustain those convictions. As Guam points out, it sought a superseding indictment because Mary Jo recalled additional incidents of sexual conduct. Where additional evidence is obtained against a defendant, "the prosecution has the right, if not the duty," to increase charges or more accurately state the Government's position. Id. The prosecution's conduct in this case was permissible and does not support Atoigue's vindictive prosecution claim. Accordingly, we affirm the trial court's finding that the additional charges were brought in good faith.
 
 VII. VIDEOTAPED TESTIMONY
 
 47
 "The order of proof at trial is a matter within the sound discretion of the trial court and will not be overturned in the absence of prejudicial error." United States v. Martinez-Villanueva, 463 F.2d 1336, 1337 (9th Cir.), cert. denied, 409 U.S. 915 (1972). Federal Rule of Evidence 611(a) provides that a trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time."
 
 
 48
 The trial court granted Guam's motion to have the videotaped testimony of Atoigue's expert witness, Dr. Shields, played during Guam's case-in-chief immediately followed by Dr. Forman's rebuttal testimony. This was done because Dr. Forman had to leave Guam for another commitment and would have been unavailable to give rebuttal testimony after Atoigue put on his defense.
 
 
 49
 The Third Circuit faced a somewhat similar situation in a civil medical malpractice case, Lis v. Robert Packer Hosp., 579 F.2d 819 (3rd Cir.), cert. denied, 439 U.S. 955 (1978). In Lis, the district court permitted the defendants to call the plaintiff's expert witness as a defense witness at the conclusion of the defense's cross-examination. Id. at 823. The court found no error in the trial court's discretionary decision. Id. "If convinced that practical reasons justify calling a witness out of turn and that the testimony will not produce undue confusion in the minds of the jurors, experienced trial courts will permit the practice. If it is the product of an informed discretion, the decision will not be disturbed." Id. Even though Lis was a civil case, its reasoning provides guidance in this case.
 
 
 50
 Atoigue argues that disrupting the order of proof stripped him of the presumption of innocence and relieved Guam of the burden to prove its case beyond a reasonable doubt. We disagree. Although it is true that he was not required to introduce any evidence in his defense, he does not contend that he would not have called Dr. Shields. Indeed, he obtained a videotape of Dr. Shields' testimony in anticipation of responding to Guam's expert. It is highly unlikely that he would have opted not to respond to Dr. Forman's testimony. Moreover, if, after hearing her testimony, he had decided not to call Dr. Shields, Atoigue could have presented that argument in the trial court. Furthermore, calling the experts out of the usual order of proof was probably less confusing for the jury than if they had testified days apart.
 
 
 51
 Finally, immediately before Dr. Shields' videotaped testimony was played, the trial court explained to the jurors that they would be hearing testimony out of order and he cautioned them that the burden of proof remained with the prosecution. "As I told you earlier that the defense is not required to present any evidence, whatsoever, or even to present any witnesses, whatsoever, because the burden is always on the government to prove the defendant guilty beyond a reasonable doubt." Thus, the trial court's cautionary instruction alleviated the possibility that the jurors would improperly shift the burden of proof. Given the trial court's broad discretion in controlling the order of proof and Atoigue's failure to establish prejudice, the trial court did not abuse its discretion in permitting the witnesses to testify out of order.
 
 
 52
 AFFIRMED.
 
 
 
 *
 The Honorable Bailey Brown, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 **
 The Honorable Terry J. Hatter, Jr., District Judge, United States District Court for the Central District of California, sitting by designation
 
 
 ***
 The Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, sitting by designation
 
 
 d
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 While this appeal was pending, the Supreme Court held that Fed.R.Evid. 702 supersedes the general acceptance standard established in Frye v. United States, 293 F. 1013 (D.C.Cir.1923). Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. ----, 113 S.Ct. 2786, 2793-94 (1993)
 
 
 [2]
 The expert witness in Chischilly testified that "one in 2563 [was] a 'conservative estimate' of the probability of a similar match between the DNA of a randomly selected American Indian and either the evidentiary sample or the defendant's DNA." Slip op. at 8107
 
 
 [3]
 Atoigue does not challenge the sufficiency of either his conviction for one count of second degree criminal sexual conduct or his convictions on counts one through four for first degree criminal sexual conduct. Indeed, after reviewing the trial transcript, we conclude that the evidence was sufficient to support his convictions on those counts
 
 
 [4]
 The federal speedy trial counterpart is codified at 18 U.S.C. Sec. 3161
 
 
 [5]
 The opinion of the Guam Appellate Division states that the trial was continued at the request of Atoigue. Atoigue claims that the statement is inaccurate in that he did not move for a continuance. Rather, he states that a continuance "was certainly necessary to allow his expert to review the voluminous materials" resulting from the DNA tests. In accordance with either version of events, the delay was for Atoigue's benefit
 
 
 [6]
 Atoigue also argues that the grand jury was not impartial because it indicted him for three unsupported counts. The error, if any, was rendered harmless because Guam dismissed those counts before trial