106 F.3d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Anthony DAVIS, Defendant-Appellant.
 No. 95-50514.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1996.
Decided Jan. 10, 1997.
 
 Before: GOODWIN, WIGGINS, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 After a jury trial, Paul Anthony Davis was convicted on both counts of an indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and using or carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c). The district court sentenced Davis to 322 months imprisonment. Davis raises several issues related to his conviction and to his sentence. We affirm.
 
 I. The Sufficiency of the Evidence
 
 3
 Davis challenges the sufficiency of the evidence on both counts. We review the evidence in the light most favorable to the prosecution. United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995). We affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 A. Felon-in-Possession
 
 4
 Section 922(g) makes it unlawful for a convicted felon to possess a firearm that has traveled in interstate commerce. In order to obtain a conviction under section 922(g), the government must prove three elements: (1) the defendant is a convicted felon; (2) the gun in question has traveled in interstate commerce; and (3) the defendant knowingly possessed the gun. United States v. Woodall, 938 F.2d 834, 837 (8th Cir.1991); United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir.1989). Davis contends the evidence was insufficient to establish that he knowingly possessed the gun found underneath the Camaro.
 
 
 5
 Our review of the record discloses evidence, which if believed by the jury, would be sufficient to support the jury's conclusion that Davis knowingly possessed the gun. Although the law enforcement officers at the checkpoint never saw Davis with the gun in his hands, considerable evidence indicates Davis threw the gun under the car as he got out of the vehicle: (1) Officer Tostado testified that Davis appeared nervous when he exited the car the first time while the car was in the dark; (2) Officer Tostado testified he could not see Davis's hands because they were covered with a dark jacket when he exited the car the first time; (3) Agent Veliz testified he saw Davis's hands "fumbling" underneath his jacket before he exited the vehicle the second time; (4) Agent Veliz testified that Davis made an unusual "rolling" exit from the vehicle in a hunched position; (5) Agent Veliz testified he heard a "metallic sound" as Davis exited the vehicle; (6) Agent Veliz testified he saw the gun on the ground immediately thereafter; (7) Officer Tostado testified he saw Davis appear to drop something as he exited the vehicle; and finally, (8) Officer Tostado testified he did not observe any movement by the back seat passengers.
 
 
 6
 Davis relies on authority establishing that mere proximity to a weapon is insufficient to establish possession. Here, however, the evidence did not show that Davis was simply a passenger in the Camaro where the gun was found. Rather, shortly after Officer Tostado observed him behaving "nervously" when getting out of the car with his hands covered, Davis "rolled" out of the Camaro right in front of Agent Veliz, who immediately heard a metallic sound. Simultaneously, Officer Tostado saw Davis appear to discard something under the vehicle. Viewed in the light most favorable to the prosecution, this evidence supports the jury's finding that Davis actually possessed the gun when he got out of the car. Therefore, we conclude there was sufficient evidence to uphold Davis's section 922(g) conviction.
 
 B. "Using or Carrying" a Firearm
 
 7
 In order to convict Davis of a violation of Section 924(c)(1), the government must prove beyond a reasonable doubt that he (1) knowingly used or carried a firearm (2) during and in relation to a drug trafficking crime. United States v. Martinez, 967 F.2d 1343, 1346 (9th Cir.1992). In order for a defendant to be convicted of "carrying" a gun in violation of section 924(c)(1), the defendant must have transported the gun on or about his person. United States v. Hernandez, 80 F.3d 1253, 1258 (9th Cir.1996). "This means the firearm must have been immediately available for use by the defendant." Id.
 
 
 8
 Beginning with the first element, considerable evidence shows that the firearm was immediately available for Davis's use when the Camaro was stopped at the border checkpoint. Whether the gun was under the seat or on the floorboard, Davis was able to pick the gun up, conceal it from the officers, and toss it under the vehicle as he exited.
 
 
 9
 Additionally, the evidence was sufficient to show that Davis was carrying the firearm during a drug trafficking crime. Three pieces of paper were found in the pockets of pants found in the blue and black duffel bag, and evidence tied each piece of paper to Davis. Nothing else in the duffel bag was linked to the other three passengers. Thus, the jury had ample evidence to conclude that the duffel bag--and the marijuana inside it--belonged to Davis. Furthermore, the marijuana was divided into small quantities indicating that it was packaged for sale. Accordingly, the evidence was sufficient to establish that Davis possessed the marijuana with the intent to distribute it, a drug trafficking crime. Therefore, we conclude that Davis's section 924(c)(1) conviction is also supported by sufficient evidence.
 
 II. The Section 924(c)(1) Jury Instruction
 
 10
 The district court gave the following instruction on the section 924(c) "using or carrying" count:
 
 
 11
 In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.
 
 
 12
 First, the defendant committed the crime of possession of marijuana with intent to distribute; and
 
 
 13
 Second, the defendant knowingly carried a semi-automatic pistol during and in relation to the crime.
 
 
 14
 The phrase "in relation to" means that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence of involvement cannot be the result of accident or coincidence.
 
 
 15
 Clerk's Record ("CR") 64. The district court did not provide any further definition of the term "carried." Davis argues the district court's instruction was erroneous because it did not require the government to prove he had the firearm on or about his person in order to meet the "carrying" prong of the statute.
 
 
 16
 Even though Davis failed to object to the court's section 924(c) instruction, this court reviews for harmless rather than plain error due to the intervening change in circuit authority regarding this instruction. United States v. Keys, 95 F.3d 874, 880 (9th Cir.1996) (en banc ). Under this test, " 'the omission [or misdescription] is harmless only if review of the facts found by the jury establishes that the jury necessarily found the omitted [or misdescribed] element.' " United States v. Lopez, 100 F.3d 98, 103 (9th Cir.1996) (quoting Roy v. Gomez, 81 F.3d 863, 867 (9th Cir.1996) (en banc )).
 
 
 17
 The jury concluded that Davis knowingly possessed a firearm based on the evidence showing that Davis dropped the firearm under the vehicle as he exited. These facts found by the jury necessarily establish that the jury found that Davis had the firearm "on or about his person" or "immediately available for use." Therefore, we hold that the error in the jury instructions with respect to section 924(c)'s "carry" element was harmless.
 
 III. Severance of the Two Counts
 
 18
 We review the district court's denial of a motion to sever for an abuse of discretion. United States v. Baker, 10 F.3d 1374, 1386 (9th Cir.1993). "The test for abuse of discretion ... is whether a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." Id. at 1387 (internal quotation omitted); United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir.1987).
 
 
 19
 We have cautioned against the consolidation of "felon-in-possession" charges like section 922(g) with other substantive offenses without appropriate measures safeguarding the defendant from the prejudicial effect of the prior felony. United States v. Nguyen, 88 F.3d 812, 817-18 (9th Cir.1996). Although severance is the preferred alternative, no manifest prejudice results where the evidence against the defendant is strong and the trial judge gives appropriate curative instructions. See id. at 817.
 
 
 20
 Here, the evidence of the defendant's guilt was considerable. Moreover, the district court gave timely curative instructions. Davis's prior conviction was received into evidence via an unadorned stipulation. Moreover, the prosecutor did not refer to Davis as a "convicted felon," which might have magnified any prejudicial effect. Cf. United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir.1986) (concluding that new trial was required where trial judge failed to give curative instruction and prosecutor referred to the defendant as a "convicted felon" throughout the trial). On these facts, we conclude that no manifest prejudice resulted from the district court's refusal to sever the counts against the defendant.
 
 IV. The Prosecutor's Closing Argument
 A. Comment about the Veracity of Witnesses
 
 21
 The government may not vouch for the credibility of its witnesses. United States v. Simtob, 901 F.2d 799, 805 (9th Cir.1990). Instances of prosecutorial vouching are reviewed for harmless error. United States v. Browne, 829 F.2d 760, 766 (9th Cir.1987). Reversal is warranted only if its more probable than not that the prosecutor's conduct materially affected the outcome of the trial. Id. Prompt curative instructions may serve to minimize any error caused by the prosecutor's remarks. See United States v. McCown, 711 F.2d 1441, 1451 (9th Cir.1983).
 
 
 22
 During closing argument, the prosecutor made a series of remarks which arguably vouched for the veracity of the officer witnesses and one defense witness. Record of Transcript ("RT") (July 15, 1993) at 1184-85. The district judge sustained an objection to this argument and told the prosecutor to argue the facts and the evidence. Before the next recess, the district judge sua sponte gave a curative instruction to the jury, striking the prosecutor's remarks about the veracity of these witnesses from the record and telling the jury they could not consider the prosecutor's remarks. Id. at 1187-88. Later, in the final instructions to the jury, the judge gave a more general instruction about the prosecutor's comments. CR 64.
 
 
 23
 These curative instructions and the considerable evidence of the defendant's guilt make it unlikely that a single remark in the prosecutor's closing had a material effect on the trial's outcome. Accordingly, we conclude that the prosecutor's remarks did not unfairly affect the outcome of the trial.
 
 B. Other Remarks
 
 24
 Davis also argues that several other remarks made in the prosecutor's closing are sufficiently prejudicial to warrant reversal. Where Davis did not object to these allegedly improper remarks, we review for plain error. United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986). Where Davis did object, we review for harmless error. Id.
 
 
 25
 Even under the harmless error standard, none of these remarks merits reversal of Davis's conviction. Many are simply comments on what may reasonably inferred from the evidence. In another instance, the district judge sustained an objection and the prosecutor immediately changed the subject. Finally, where potentially prejudicial argument was made about the defendant's failure to try on the shoes found in the Camaro, the district judge gave a curative instruction to the jury telling them that the defendant never had the burden of proof as to any element. This instruction effectively cured the only potential prejudice created by any of these remarks. Therefore, we conclude that any error created by the prosecutor's closing argument was harmless and does not merit reversal of the Davis's conviction.
 
 V. Expert Opinion Testimony
 
 26
 Drug Enforcement Administration ("DEA") Special Agent Larry Roberts testified as a prosecution expert witness. Davis contends the district court erred in allowing this expert to give opinion testimony. The district court's decision to admit expert opinion testimony is reviewed for abuse of discretion. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir.1995).
 
 
 27
 In United States v. Tarem-Palma, 997 F.2d 525 (9th Cir.1993), the district court allowed a law enforcement agent to testify that firearms are commonly used in drug transactions to protect either the drugs or the money at the time of the exchange. On appeal, we held that this testimony was admissible to explain the modus operandi of the unlawful carrying of a firearm during a drug trafficking crime. Accordingly, we concluded that the law enforcement agent's testimony was admissible under these circumstances.
 
 
 28
 Agent Roberts' testimony falls squarely within the rule of Taren-Palma. Davis's contention that the agent's testimony tends to prove his knowledge of the marijuana and the gun is unavailing. Rather, the evidence tends to show that Davis's possession of the gun was related to his possession of the marijuana, an element of the Section 924(c) offense. See United States v. Barber, 80 F.3d 964, 970 (4th Cir.) ("[C]ourts have distinguished between expert opinion testimony that describes the significance of a defendant's actions to an illegal enterprise from opinion testimony that a defendant had an actual thought or intent."). We conclude the evidence was admissible under Taren-Palma.
 
 
 29
 Additionally, Davis argues that Agent Roberts's testimony should not have been admitted because it was inadmissible drug courier profile evidence. See United States v. Lui, 941 F.2d 844, 847-48 (9th Cir.1991) (noting that drug courier profiles are inherently prejudicial because they potentially include innocent citizens as profiled drug couriers). We reject this argument. Agent Roberts's testimony was not drug courier profile evidence. As discussed above, substantial evidence linked Davis to possession of the marijuana and the gun. Agent Roberts's expert opinion testimony explained how the possession of the gun was related to the possession of the marijuana. The jury was properly instructed about how to assess this opinion testimony. Therefore, we conclude that the district court did not abuse its discretion in allowing the jury to hear this expert opinion testimony.
 
 
 30
 VI. The Prosecutor's Comments to the Grand Jury
 
 
 31
 We review de novo the district court's determination that the prosecutor's alleged misconduct before the grand jury did not warrant the indictment's dismissal. United States v. Larrazolo, 869 F.2d 1354, 1355 (9th Cir.1989); see also United States v. Spillone, 879 F.2d 514, 520 (9th Cir.1989) (noting intracircuit conflict on the proper standard of review and holding the de novo standard is correct because the issue presented is a mixed question of law and fact). We note that the separation of powers doctrine mandates our concern for the independence of the prosecutor and the grand jury; thus, we have been reluctant to intrude on grand jury proceedings. See United States v. DeRosa, 783 F.2d 1401, 1404 (9th Cir.1986). Furthermore, we note that dismissal is an especially disfavored remedy after the conclusion of trial. Guam v. Palomo, 35 F.3d 368, 371 (9th Cir.1994); Guam v. Muna, 999 F.2d 397, 399 (9th Cir.1993).
 
 
 32
 Davis contends that a remark made by an Assistant United States Attorney ("AUSA") before the grand jury in response to a question about the lack of fingerprint evidence warrants dismissal of the indictment. Assuming arguendo that the AUSA's comment was misconduct, we reject Davis's argument. The AUSA's remarks did not render the grand jury proceeding "fundamentally unfair." Larrazolo, 869 F.2d at 1357-58. Moreover, the remarks do not raise a grave doubt that the grand jury's decision to indict was free from the substantial influence of the misconduct. United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir.1992). The AUSA's comment came in response to one of several questions from the grand jurors. The grand jurors did not question the witness in further detail about the evidence showing that Davis possessed the gun. Consequently, we conclude that the AUSA's comments had no effect whatsoever on the grand jury's decision to indict. Therefore, the district court did not err in denying the defendant's motion to dismiss the indictment.
 
 VII. U.S.S.G. § 5K2.13
 
 33
 Davis contends that he was entitled to a downward departure under U.S.S.G. § 5K2.13. The district court concluded that Davis did not meet the requirements for a section 5K2.13 departure. We review such an interpretation of the sentencing guidelines de novo. United States v. Eaton, 31 F.3d 789, 793 (9th Cir.1994).
 
 
 34
 Section 5K2.13 gives the district court discretion to depart downward from a defendant's guidelines offense level "if the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants." A section 5K2.13 downward departure has five requirements:
 
 
 35
 The defendant must have 1) committed a non-violent offense 2) while suffering from significantly reduced mental capacity 3) not caused by voluntary use of drugs or other intoxicants. 4) The reduced capacity must contribute to the commission of the offense, and 5) the defendant's criminal history must not indicate a need for incarceration to protect the public.
 
 
 36
 United States v. Cantu, 12 F.3d 1506, 1511 (9th Cir.1993). The district court concluded that Davis failed to meet requirements two, four, and five.
 
 
 37
 We have held that significantly reduced mental capacity "comprehends both organic dysfunction and behavioral disturbances that impair the formation of reasoned judgments." Id. at 1513. Accordingly, a defendant suffering from post-traumatic stress disorder is eligible for a departure under section 5K2.13 "if his ailment distorted his reasoning and interfered with his ability to make considered decisions." Id.
 
 
 38
 We conclude there is no basis in the record for finding that Davis suffered from significantly reduced mental capacity. Davis presents testimony to show he was functioning with "borderline intelligence" at the time of the offense. This evidence does not show that Davis's reasoning was distorted or that he lacked the ability to make considered decisions. Therefore, we conclude that Davis fails to meet the second requirement of section 5K2.13.
 
 
 39
 Moreover, the record does not indicate that Davis's low intelligence was a "contributing cause" of the offense. The record does not indicate that Davis's decisions to possess a firearm and to carry it while committing a drug trafficking crime were at all influenced by his mental capacity. Therefore, we conclude that Davis also fails to meet the fourth requirement for a downward departure under section 5K2.13.
 
 
 40
 Because we conclude that Davis failed to meet two of the five requirements of section 5K2.13, we need go no further to conclude that the district court's sentence may be upheld. The district court correctly determined that Davis failed to meet the requirements for a downward departure under section 5K2.13.
 
 VIII. Cumulative Error
 
 41
 Finally, Davis contends that his conviction should be reversed under the cumulative error doctrine. We disagree. The only errors Davis can cite are the insufficient section 924(c)(1) jury instruction and the prosecutor's remarks about the veracity of the witnesses. We conclude that Davis suffered little or no prejudice from these errors. Furthermore, the evidence of Davis's guilt was considerable if not overwhelming. Accordingly, we conclude that the cumulative error doctrine does not merit reversal.
 
 
 42
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3